**Leon HOLLOWELL, Plaintiff,**

v.

**MICHIGAN CONSOLIDATED GAS COMPANY, Defendant.**

No. Civ.A. 97–40450.

United States District Court,
E.D. Michigan,
Southern Division.

May 27, 1999.

Charles B. Idelsohn, Southfield, MI, Pamela N. Beeghly, Southfield, MI, for Leon Hollowell, plaintiff.

Martin J. Galvin, John F. Birmingham, Dykema Gossett, Detroit, MI, Nancy L. Niemela, Maureen E. Oxley, Michigan Consolidated Gas, Company, Detroit, MI, for Michigan Consolidated Gas Company, defendant.

*MEMORANDUM OPINION AND OR-DER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDG-MENT PURSUANT TO FED. R.CIV.P. 56*

GADOLA, District Judge.

The instant case involves claims brought by plaintiff, Leon Hollowell, alleging discrimination and retaliation in violation of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Elliott–Larsen Civil Rights Act, Mich. Comp.Laws § 37.2101, *et seq.* ("Elliott–Larsen"). Before the court is a motion for summary judgment pursuant to Fed. R.Civ.P. 56 filed by defendant, Michigan Consolidated Gas Company. For the reasons set forth below, this court will grant defendant's motion.

**Factual Background**

Plaintiff, an African–American, was hired by defendant in October of 1989 as a Project Manager in defendant's Information Systems Department. At that point, plaintiff reported to Chris Lydick, a Caucasian. Plaintiff initially had a good working relationship with Lydick, who gave plaintiff an evaluation of "meets expectations" in 1990 and an evaluation of "exceeds expectations" in 1991. In 1992, however, plaintiff alleges that Lydick made certain remarks which plaintiff characterizes as "racial." Among other things, Lydick allegedly asked plaintiff whether he carried a gun, and Lydick also allegedly "feigned indignation" at the suggestion that African–Americans were required to act "happy go lucky." Plaintiff also alleges that Lydick favored Caucasian employees over minority employees. Specifically, plaintiff asserts that two minority employees, Julia Mao and Anne Prasad, were not complimented for work performance when other Caucasian employees received such compliments for similar performance. In September of 1992, Lydick gave plaintiff an Interim Appraisal rating plaintiff's performance as "meets some expectations." Plaintiff submitted a lengthy rebuttal to this appraisal, taking issue with various comments made by Lydick.

In October of 1992, as a result of the poor working relationship that had developed between Lydick and plaintiff, plaintiff was transferred to another area within the defendant's operations. Plaintiff suffered no loss in pay, benefits or title as a result of this transfer. Since October of 1992, plaintiff has had little contact with Lydick.

At his new assignment, plaintiff's supervisor was Don Miller, also a Caucasian. Miller prepared plaintiff's 1992 final evaluation, and gave plaintiff a rating of "meets some expectations." Consistent with prior evaluations, plaintiff's 1992 evaluation cited strong technical skills, but indicated that plaintiff's managerial performance needed improvement. Plaintiff was unsatisfied with this evaluation, and accordingly, on March 31, 1993, plaintiff filed a charge with the EEOC (hereinafter "EEOC Charge 1") alleging discriminatory treatment in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). Plaintiff contends that, subsequent to the filing of EEOC Charge 1, Miller gave him unfavorable work assignments in retaliation for his complaints. Despite the alleged friction between Miller and plaintiff, plaintiff's 1993 performance evaluation indicated his performance "meets expectations," which constituted a higher rating than plaintiff had received in 1992.

In 1994, defendant instituted a company-wide leader selection program that was designed to reduce the number of managerial and supervisory employees. All managerial and supervisory employees were subject to this selection process. Part of this process involved securing "nominations" from fellow employees. Plaintiff was ultimately not selected for a managerial position, and defendant contends that this decision was based on plaintiff's lack of successful experience managing large-scale projects and the small number of nominations submitted on his behalf. Defendant has submitted the affidavit of Sharon O'Neil, defendant's Vice President of Information and Technology Management, in which O'Neil indicates that plaintiff received fewer nominations than any of the persons selected for managerial positions.

Subsequent to this leader selection decision, plaintiff was reclassified from a Project Manager to an Information Technology Specialist. He incurred no loss of pay

or benefits as a result of this reclassification. Unsatisfied with this decision, plaintiff filed a second charge with the EEOC (hereinafter "EEOC Charge 2") on September 8, 1994.

As of September 1, 1994, plaintiff reported to Gail Parks, a project leader. Plaintiff contends that he had problems with Parks from the beginning, and further, despite the fact that Parks is an African–American, plaintiff contends that Parks gave favorable treatment to Caucasian employees. Specifically, plaintiff contends that he was passed over for three managerial positions, two of which went to Caucasian employees and one of which went to an Indian employee. Parks asserts that the successful applicants were chosen because they were the most qualified, while plaintiff contends that the failure to promote him was the result of racial discrimination. Plaintiff's 1994 performance evaluation indicated a rating of "meets expectations." Consistent with prior evaluations, Parks complimented plaintiff's technical skills while indicating that his managerial skills needed some improvement.

On October 27, 1995, plaintiff filed his third EEOC charge of discrimination (hereinafter "EEOC Charge 3"). That charge alleged retaliation for having filed previous EEOC charges and, notably, did not include any allegation of direct racial discrimination. The specific allegations included in EEOC Charge 3 are that plaintiff was denied a pay increase in April of 1995, that plaintiff was denied a promotion in June of 1995, and that plaintiff was denied a "Thanks to You" award in September of 1995.

In late 1994, defendant instituted a company-wide competency assessment program called "JET." Pursuant to this process, employees were asked to assess themselves in 39 separate categories related to their overall job performance. Plaintiff assessed himself as completely competent in all areas. In the second step of this process, Parks, as plaintiff's supervisor, was required to assess plaintiff in the same content areas. Because Parks had only been plaintiff's supervisor for four months prior to the evaluation, Parks consulted with Lydick and Miller, plaintiff's prior supervisors, in order to assess plaintiff's skills. Ultimately, Parks rated plaintiff as consistently competent in only 14 of the 39 areas. Plaintiff objected to this assessment of his skills.

Parks subsequently informed plaintiff that, per the JET policy, the pay of employees was to correlate with their competencies. Accordingly, given Parks's rating of plaintiff, plaintiff was in danger of suffering a pay reduction if he did not demonstrate additional competencies. Throughout 1995 and 1996, Parks communicated to plaintiff the importance of providing evidence of additional competencies to avoid a reduction in pay. On April 10, 1996, Parks conducted plaintiff's 1995 performance review, giving him a rating of "meets expectations." In an April 15, 1996 memo to plaintiff which memorialized the discussions held during that performance review, Parks informed plaintiff:

> As discussed during your 1995 Performance Review, you must take the initiative to identify those JET Competencies for the Information Technology Specialist that you feel you demonstrate on a consistent basis. Once the identification has been completed, you must prepare documentation which will substantiate and attest to the consistent demonstration of each identified Competency.... This is the first step in the JET Competency Review Process.

> The next step in the review process is Leader Confirmation. I would like to review the documentation that you have prepared to confirm that the identified Competency has been demonstrated on a consistent basis. Once the Competency has been confirmed, the next step will be to submit the documentation along with a Request for Competency Review Form to the Review Panel for confirmation.

I strongly encourage you to review your current JET Competency Rating, to identify Competencies which you have demonstrated on a consistent basis, and to begin work on the first step of the JET Competency Review Process. Failure to participate in the JET Competency Review Process may put your current salary at risk.

The changing culture at MichCon places the responsibility for personal and career development on each employee. It is expected that employees will take the first step in their development which includes skills/competency assessments....

*I am concerned about your JET Competency Rating and the impact it may have on your salary. You need to initiate action to gain recognition for additional Competencies and/or establish a development plan which will allow for the acquisition of additional Competencies. We have discussed this concern on multiple occasions, on October 20, 1995 during your 1995 Interim Performance Review, on February 5, 1996 when we met to review the expectations of a Lead Analyst, and on March 25, 1996 in a meeting with Tom Motsinger and Sharon O'Neil. I am encouraging you to take action to resolve this dilemma.*

(Def.'s Br. in Supp. of Mot. for Summ.J., Exh. 18 (emphasis added).) Despite these repeated warnings that plaintiff was responsible for submitting evidence of additional competencies, and that failure to submit such evidence might negatively impact his salary, plaintiff never took any action to demonstrate or develop additional competencies.

On July 26, 1996, Parks again met with plaintiff to discuss the salary implications of his failure to demonstrate additional competencies. Parks informed plaintiff that his salary of $64,027 was 50.9% above the JET Predicted Salary for 14 competencies. Parks warned plaintiff that, in

the event he failed to take action to demonstrate or develop additional competencies, his salary would be reduced in two phases by a total of $17,356. Parks again reiterated to plaintiff that the primary onus was on plaintiff to initially identify additional competencies. On September, 10, 1996, Parks informed plaintiff that, as of October 1, 1996, plaintiff's salary would be reduced in accordance with the terms discussed in the July 26, 1996 meeting. On October 1, 1996, the first phase of that reduction occurred, and on April 1, 1997, the second phase of that reduction occurred.

In response to the salary reduction, plaintiff filed his fourth and final EEOC charge of discrimination (hereinafter "EEOC Charge 4") on October 16, 1996. Again, plaintiff alleged only retaliation for the prior filing of EEOC charges of discrimination, rather than asserting direct claims of racial discrimination.

Plaintiff continues to be employed by defendant as an Information Technology Specialist. Plaintiff received a "meets expectations" rating for both 1996 and 1997.

Plaintiff received a Notice of Right to Sue from the EEOC with respect to EEOC Charges 1 and 2 on September 29, 1995. Plaintiff received a Notice of Right to Sue with respect to EEOC Charge 3 on July 17, 1997. Plaintiff received a Notice of Right to Sue with respect to EEOC Charge 4 on July 21, 1997.

On August 31, 1997, plaintiff filed the instant complaint alleging racial discrimination and retaliation under both Title VII and Elliott–Larsen.[1] On July 23, 1998, defendant filed a motion for summary judgment. In response, plaintiff filed a motion to remand, a motion to compel additional discovery and a motion to extend discovery. This court denied the motion to remand, denied the motion to compel discovery, and granted in part the motion to extend discovery. Because

---

1. Plaintiff's complaint also originally included a claim for violation of the Vietnam Era Veterans Readjustment Assistance Act of 1974,

but that claim was voluntarily dismissed pursuant to a stipulation of the parties on March 5, 1998.

plaintiff was entitled to additional discovery, this court dismissed defendant's motion for summary judgment without prejudice. On March 16, 1999, subsequent to the additional period set for discovery, defendant filed the instant motion for summary judgment.

**Discussion**

### 1. Standard for summary judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir. 1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir. 1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

### 2. Analysis

#### a. Statute of limitations

The first argument offered by defendant in support of its motion for summary judgment is that some of the claims asserted in

plaintiff's complaint are barred by the applicable statute of limitations.

With respect to plaintiff's claims under Title VII, defendant points out that, pursuant to the explicit language of the Notices of Right to Sue as well as 42 U.S.C. § 2000e-5(f)(1), plaintiff was required to file suit within ninety (90) days of receipt of the Notice of Right to Sue. The Notices of Right to Sue with respect to EEOC Charges 1 and 2 are dated September 25, 1995. Plaintiff's complaint, however, was not filed until nearly two years later, on August 31, 1997. Accordingly, defendant contends that the claims related to EEOC Charges 1 and 2 are barred by the applicable statute of limitations.

With respect to plaintiff's claims under Elliott–Larsen, defendant notes that the applicable statute of limitations, pursuant to Mich.Comp.Laws § 600.5805(8), is three years. Given that plaintiff's complaint was filed on August 31, 1997, defendant contends that any claims arising out of events occurring prior to August 31, 1994 are barred by the statute of limitations. As defendant correctly points out, each of the events complained of in EEOC Charges 1 and 2 occurred prior to August 31, 1994. Accordingly, defendant contends that claims brought pursuant to Elliott–Larsen alleging damages from those actions are also barred by the statute of limitations. Therefore, so defendant argues, the only viable claims are claims arising out of events that occurred after Parks became plaintiff's supervisor on September 1, 1994.

Plaintiff offers virtually no evidence or argument in response to defendant's statute of limitations claims. Plaintiff merely makes the conclusory assertion that the "continuing violation" doctrine salvages his untimely claims. In *Sumner v. Goodyear Tire & Rubber Co.,* 427 Mich. 505, 398 N.W.2d 368 (1986), the Michigan Supreme Court outlined its understanding of the continuing violation doctrine. As the *Sumner* court provided:

> In the wake of the [holding of the United States Supreme Court in *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) ], the continuing violation doctrine was analyzed in terms of three subtheories: 1) a "policy of discrimination," 2) a "continuing course of conduct," and 3) the "present effects of past discrimination."
>
> The first subtheory involves allegations that an employer has engaged in a continuous policy of discrimination. In such a case, the plaintiff is alleging that "he is challenging not just discriminatory conduct which has affected him, but also, or alternatively, the underlying employment system which has harmed or which threatens to harm him and other members of his class."
>
> . The second subtheory, the "continuing course of conduct" or "series of events" situation is relevant where an employee challenges a series of allegedly discriminatory acts which are sufficiently related so as to constitute a pattern, only one of which occurred within the limitation period.
>
> The third subtheory, by all accounts, ceased to be actionable after *Evans.* That subtheory held that a continuing violation existed where a party suffered timely effects or injury from a past untimely act of discrimination.

*Id.* at 528, 398 N.W.2d 368 (citations omitted). This court notes that the Sixth Circuit employed the same reasoning in *Dixon v. Anderson,* 928 F.2d 212 (6th Cir. 1991). In that case, the court held that "continuing violations" fall into two categories: 1) where there is a continuing course of conduct, and 2) where there has occurred a longstanding and demonstrable policy of discrimination. The court noted, as did the court in *Sumner,* that the third category, namely where there are continuing effects of past discriminatory acts, ceased to be actionable in the wake of *Evans. See Dixon,* 928 F.2d at 216–17. Accordingly, the question before the court, with respect to both the claims under Title VII and the claims under Elliott–Larsen, is whether plaintiff has alleged a "continu-

ing violation" under one of the two actionable theories set forth above.

■ Upon review, this court finds that plaintiff has failed to allege facts sufficient to support a claim that defendant has employed any "over-arching policy of discrimination." Plaintiff has not alleged any organized or systemic discrimination which has harmed or threatens to harm all African–American employees of defendant. Rather, plaintiff has alleged certain specific acts of discrimination that affected him personally. Accordingly, the "policy of discrimination" subtheory outlined in *Sumner* is unavailable to plaintiff in this case. This court also finds that plaintiff has failed to allege a "continuing course of conduct" sufficient to salvage his claims arising out of events occurring prior to August 31, 1994. The allegations of discrimination and retaliation in this case involve different supervisors taking a variety of different allegedly discriminatory actions over a period of years. These actions are not sufficiently related so as to constitute a pattern which would bring plaintiff's claims under the ambit of the continuing violation doctrine.

■ Therefore, this court accepts defendant's argument with respect to the application of the statute of limitations in this case. As a result, this court finds that plaintiff's Title VII claims premised on the events described in EEOC Charges 1 and 2, as well as plaintiff's Elliott–Larsen claims related to events prior to August 31, 1994, are barred by the applicable statute of limitations.

Accordingly, the claims that remain are plaintiff's claims under Title VII related to EEOC Charges 3 and 4, as well as plaintiff's claims under Elliott–Larsen related to alleged discrimination occurring subsequent to the time that Gail Parks became plaintiff's supervisor on September 1, 1994.

**b. Title VII**

■ This court notes at the outset that plaintiff, in EEOC Charges 3 and 4, alleges *retaliation only,* and does not allege direct racial discrimination. Therefore, the only claims plaintiff may pursue under Title VII are claims that he was discriminated against in retaliation for filing previous charges of discrimination with the EEOC.

■ To establish a claim of retaliation under Title VII, plaintiff must establish that: (1) he was engaged in activity protected under Title VII; (2) he was subject to an adverse employment action, and (3) that there is a causal link between the protected activity and the adverse employment action. *See Johnson v. Department of Health and Human Servs.,* 30 F.3d 45, 47 (6th Cir.1994). As the Sixth Circuit held in *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir. 1990), plaintiff must offer specific evidence "sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action."

■ Plaintiff has failed to offer such evidence in this case. The primary adverse employment actions of which plaintiff complains in EEOC Charges 3 and 4 are the denial of promotions to managerial positions and the reduction in his salary that resulted from the JET Competency Assessment process. There is simply no evidence to suggest that there is any causal connection between the filing of EEOC Charges and these employment decisions. First, the person with the most significant input with respect to these employment decisions was Gail Parks, who is a member of the same protected class as plaintiff. This court finds it unlikely that Parks would retaliate against plaintiff for attempting to protect the rights of members of a protected class of which she is also a member.

Second, with respect to the denial of promotions, Parks has asserted in her deposition that the promotion decisions were based solely on merit, and neither race nor the previous filing of EEOC complaints entered into any of those decisions. This assertion is well-supported by the record. Plaintiff repeatedly received employment

evaluations which indicated that while his technical skills were solid, his managerial skills needed improvement. Against this evidence, plaintiff has offered only speculation and conjecture that there was some retaliatory motive underlying the failure to promote him. Plaintiff has produced the deposition testimony of a colleague, Wayne Smith, who made a number of conclusory allegations which were either irrelevant or without any substantial supporting factual detail. Plaintiff has also offered the affidavit of Chris Stanglewicz, another employee of defendant. Stanglewicz avers that he "noticed that the attitude of management changed toward Leon Hollowell" and that he "attended meetings with other supervisory personnel, who indicated to [him] that Michigan Consolidated Gas Company was looking for ways to discharge Leon Hollowell." (Pl.'s Br. in Resp., Exh. 11.) These conclusory allegations, which are completely devoid of any supporting factual detail and which are not corroborated by any other evidence in the record, are clearly insufficient to establish a genuine issue of material fact as to whether there was some retaliatory motive underlying the decision not to promote plaintiff. Accordingly, the evidence offered by plaintiff is insufficient to establish a genuine issue of material fact with respect to plaintiff's claim for retaliation related to the denial of promotions.

Finally, with respect to the reduction in salary, this court notes that when Parks initially rated defendant as consistently competent in only 14 areas, she was *not aware* of the previous EEOC charges filed by plaintiff. In addition, once the original competency findings were made, plaintiff was given numerous opportunities to come forth with evidence of additional competencies to avoid a reduction in pay. He was repeatedly advised that he bore the primary responsibility for demonstrating additional competencies, and yet he declined to provide Parks with any evidence demonstrating such competencies. Ultimately, after a period of nearly two years, defendant reduced plaintiff's salary. Under the circumstances, however, there is no evidence that Parks undertook to reduce plaintiff's salary with any discriminatory intent. Moreover, plaintiff has failed to produce any evidence that similarly situated Caucasian employees, or employees who had not filed EEOC Charges, were treated any differently. The JET program was applied to all employees of defendant, and there is no evidence to suggest that the process was applied differently to any particular employee or class of employees.

Accordingly, under the circumstances, this court finds that plaintiff has failed to establish a genuine issue of material fact with respect to his remaining claims under Title VII. Therefore, with respect to these claims, this court will grant defendant's motion for summary judgment.

### c. Elliott–Larsen

■ With respect to plaintiff's claims under Elliott–Larsen, this court notes at the outset that a plaintiff asserting claims under Elliott–Larsen must satisfy the same evidentiary burden as that imposed under Title VII. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). To the extent plaintiff asserts claims for retaliation under Elliott–Larsen, they cover the same time period and the same conduct alleged in the context of plaintiff's Title VII claims. Accordingly, for the reasons set forth above, defendant is entitled to summary judgment on plaintiff's retaliation claims under Elliott–Larsen.

■ With respect to plaintiff's claims of racial discrimination under Elliott–Larsen, plaintiff must first establish a *prima facie* case of discrimination by showing by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) for the same or similar conduct he was treated differently than similarly situated non-minority employees. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *Sisson v. Board of Regents of the*

*Univ. of Mich.,* 174 Mich.App. 742, 746, 436 N.W.2d 747 (1989). If plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to defendant to produce a legitimate, non-discriminatory reason for the employment decision. *See id.* Once the defendant meets this burden, the burden shifts back to plaintiff to offer specific evidence establishing that the defendant's stated reason is merely a pretext for discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ As set forth above, the only period for which plaintiff has asserted a timely claim for discrimination is the period beginning August 31, 1994. The only supervisor who allegedly engaged in discriminatory conduct during this period was Gail Parks. Upon a thorough review of the claims asserted by plaintiff in this case, this court finds that there is simply no evidence of racial discrimination against plaintiff. As set forth above, the JET assessment was applied to all employees, and despite plaintiff's low initial rating, he was given repeated opportunities to demonstrate additional competencies before his salary was ultimately reduced. Under the circumstances, plaintiff's reduction in salary was the result of his job performance combined with his own inaction, not the result of discrimination. Moreover, Parks has asserted that the reason that plaintiff did not receive a promotion to a managerial position was that plaintiff was not the most qualified applicant for such a position. As set forth above, this assertion is well-supported by the record, which includes evidence that plaintiff repeatedly received employment evaluations which indicated that while his technical skills were solid, his managerial skills needed improvement. Under the circumstances, defendant has clearly asserted a legitimate, non-discriminatory reason for taking the challenged employment actions in this case.

■ In response to that proffer, plaintiff has offered nothing more than conjecture and speculation. In addition to the testimony of Wayne Smith and the affidavit of Chris Stanglewicz, which evidence this court has already found insufficiently probative of discriminatory animus to warrant submission of this case to a jury, plaintiff relies primarily on an affidavit provided by Martin M. Wing, Ph.D., a purported expert in economic and statistical research. On the basis of data provided by plaintiff's counsel, which allegedly includes spreadsheet information released by defendant, Wing conducted an analysis from which he concluded that "African–American information technology professionals were paid less on average during the 1994–1998 period. Whites were paid on average $56,847 and African–Americans had an average comp rate of $51,843." (Pl.'s Br. in Resp., Exh. 13 at 2.) Wing does not, however, indicate exactly how such factors as seniority, title, merit bonuses or other related factors were incorporated into his analysis. The bald statement that African–American employees of defendant, on average, receive less compensation than Caucasian employees, does not, without more, provide any significant evidence of discrimination. Accordingly, the evidence provided by plaintiff in this case does not establish a genuine issue of material fact as to whether defendant's stated reason for taking the challenged employment actions was a pretext for discrimination.

Therefore, for the reasons set forth above, this court finds that defendant is entitled to summary judgment on plaintiff's remaining claims under Elliott–Larsen.

**Conclusion**

For the reasons set forth above, this court will grant defendant's motion for summary judgment, and dismiss plaintiff's complaint in its entirety.

Accordingly, this court having reviewed the submissions of the parties and being fully advised in the premises,

**IT IS HEREBY ORDERED** that the motion for summary judgment pursuant to

Fed.R.Civ.P. 56 filed by defendant, Michigan Consolidated Gas Company, is **GRANTED.**

**IT IS FURTHER ORDERED** that the complaint in this matter filed by plaintiff, Leon Hollowell, is **DISMISSED with prejudice** in its entirety.

**SO ORDERED.**