**Leon HOLLOWELL, Plaintiff–Appellant,**

v.

**MICHIGAN CONSOLIDATED GAS COMPANY, Defendant–Appellee.**

**No. 99–1754.**

United States Court of Appeals, Sixth Circuit.

Aug. 24, 2001.

**334**

Before KEITH, SILER, and CLAY, Circuit Judges.

## OPINION

PER CURIAM.

Leon Hollowell appeals the district court's grant of Michigan Consolidated Gas Company's motion for summary judgment on his employment discrimination and retaliation claims. Because we find no reversible error, we AFFIRM.

## I. BACKGROUND

*A. Factual Background*

In October 1989, Michigan Consolidated Gas Company ("MichCon") hired Hollowell, an African–American male, as a Project Manager in the Information Systems Department. Hollowell reported to Chris Lydick, a white female. Initially, Hollowell had a good working relationship with Lydick, and received positive job evaluations from her in 1990 and 1991. In 1992, however, Hollowell alleges that Lydick made derogatory comments about African–Americans and that she treated whites more favorably than minorities.

In September 1992, Lydick gave Hollowell an Interim Appraisal rating of "meets some expectations." (J.A. at 457). Hollowell submitted a rebuttal to this appraisal, contesting Lydick's evaluation. In October 1992, as a result of the collapse of a working relationship between Hollowell and Lydick, MichCon transferred Hollowell to another department.

After the transfer, Hollowell's new supervisor was Don Miller, a white male. Miller prepared Hollowell's final 1992 evaluation and gave him a rating of "meets some expectations." (J.A. at 467). Hollowell was displeased with this evaluation and, on March 31, 1993, he filed a charge ("Charge One") with the Equal Employment Opportunity Commission ("EEOC") alleging discriminatory statement in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the

Age Discrimination in Employment Act of 1967, § 2 *et seq.*, 29 U.S.C. § 621 *et seq.*

In 1994, MichCon instituted a company-wide leader selection program ("Realignment Program") designed to lower the number of managerial and supervisory employees. As part of the Realignment Program, MichCon required its managers to solicit nominations from co-workers to maintain their supervisory roles. On August 11, 1994, as a result of the Realignment Program, MichCon reclassified Hollowell from a Project Manager to an Information Technology Specialist. Hollowell contends that MichCon did not inform him that he could self-nominate and that MichCon used the Realignment Program to demote him while retaining less qualified white project managers. Thereafter, Hollowell was assigned to supervisor Gail Parks, an African–American woman. Subsequently, on September 8, 1994, Hollowell filed a second charge with the EEOC ("Charge Two") alleging that the reclassification through the Realignment Program was based on age and race discrimination, and in retaliation for his filing of Charge One.

In early 1995, MichCon posted an opening for a formal leadership position. Although Hollowell expressed his interest in the position to Parks, she hired a white male for the position. On October 27, 1995, Hollowell filed his third EEOC Charge ("Charge Three") alleging that MichCon refused to promote him to this formal leadership position in retaliation for filing Charges One and Two. Hollowell contends that a white man with less experience and seniority at MichCon received the position. Charge Three did not allege racial discrimination.

Also in early 1995, MichCon instituted a company-wide assessment program called "JET." Through JET, MichCon asked its employees to assess themselves in thirty-nine separate categories related to their job performance. The employees' supervisors would then rate the employees in the same thirty-nine categories. Hollowell assessed himself as completely competent in all thirty-nine categories. Since Parks, Hollowell's new supervisor, worked with him for only four months prior to the assessment, Parks consulted with Lydick and Miller, Hollowell's past supervisors, to evaluate Hollowell's competencies. Parks rated Hollowell as consistently competent in only fourteen of the thirty-nine categories. Hollowell objected to this assessment and wrote a rebuttal contesting Parks's conclusions.

On several occasions in late 1995 and early 1996, Parks informed Hollowell that pursuant to the JET program employee salary must correlate with employee competencies. On April 15, 1996, Parks informed Hollowell in a memorandum that given his competency rating, MichCon would reduce his salary if he could not establish a developmental plan to acquire and demonstrate additional competencies. On July 26, 1996, Parks informed Hollowell that if he failed to demonstrate additional competencies, MichCon would reduce his salary in two phases. Since Hollowell did not submit the additional competencies, on October 1, 1996, MichCon implemented the first phase of the salary reduction, and on April 1, 1997, MichCon implemented the second phase of the salary reduction.

On October 16, 1996, in response to the first phase of the salary reduction, Hollowell filed his fourth EEOC charge ("Charge Four"). In this charge, Hollowell alleged that MichCon reduced his salary in retaliation for his prior filing of Charges One, Two, and Three. Again, Hollowell did not allege racial discrimination in Charge Four.

*B. Procedural History*

On August 31, 1997, Hollowell brought this employment action against MichCon in Wayne County Circuit Court, Michigan, alleging racial discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Elliott–Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.* ("Elliott–Larsen"). MichCon removed the case the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1441(b).

On March 26, 1999, after the parties had completed discovery, MichCon filed a motion for summary judgment on Hollowell's claims. On May 28, 1999, the district court entered a memorandum opinion and order granting MichCon's motion for summary judgment. *See Hollowell v. Michigan Consol. Gas Co.*, 50 F.Supp.2d 695, 702 (E.D.Mich.1999). In granting Mich-Con's motion, the district court found that Hollowell's Title VII racial discrimination claims were time barred, and dismissed his Title VII retaliation claims on the merits. *See id.* at 703–04. The district court also found that Hollowell's Elliott–Larsen claims arising out of events occurring before August 31, 1994 were barred by the applicable statute of limitations. *See id.* at 703. The district court then dismissed Hollowell's remaining Elliott–Larsen racial discrimination and retaliation claims on the merits. *See id.* at 704–05. Subsequently, on June 17, 1999, Hollowell filed a timely notice of appeal from the district court's judgment.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment under a *de novo* standard. *See Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir.2001). Sum-

mary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. 56(c). "When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be reviewed in the light most favorable to the nonmoving party." *Landham v. Lewis Galoob Toys, Inc.,* 227 F.3d 619, 622 (6th Cir.2000) (citing *Matsushita Elec. Indus. Co. v. Zen Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1996) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962))). "[T]he existence of a mere scintilla of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant." *Summar v. Bennett,* 157 F.3d 1054, 1057 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. ANALYSIS

*A. Summary Judgment*

Hollowell argues that the district court failed to apply the appropriate standard in reviewing MichCon's motion for summary judgment. Specifically, Hollowell argues that the district court improperly drew inferences from the evidence in a manner adverse to Hollowell. However, upon review of the district court's order granting summary judgment and the record, we conclude that the court below properly evaluated MichCon's motion for summary judgment and reviewed the facts and drew all inferences in the light most favorable to

Hollowell.[1] Therefore, we proceed to Hollowell's substantive arguments.

### B. Statute of Limitations

#### 1. Title VII

In his complaint, Hollowell asserted racial discrimination and retaliation claims under Title VII arising from incidents occurring between 1992 and 1994. The district court concluded that these claims were time barred. *See Hollowell,* 50 F.Supp.2d at 703. We agree.

■ A plaintiff must possess a right-to-sue letter from the EEOC in order to file suit and pursue an action under Title VII. *See Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 309 (6th Cir.2000). The plaintiff must then file suit within ninety days from the date notice is given of the right to sue. *See* 42 U.S.C. § 2000e–5(f)(1); *see also Cleveland Newspaper Guild, Local 1 v. Plain Dealer Publ'g Co.,* 839 F.2d 1147, 1150 (6th Cir.1988). "[N]otice is *given,* and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of [a right-to-sue letter] notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, . . ." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 557 (6th Cir.2000) (footnote omitted).

On September 29, 1995, the EEOC issued right-to-sue letters for Charges One and Two. Accordingly, Hollowell had until January 2, 1996 to file suit. Hollowell did not file suit until August 31, 1997, almost two years after receiving his right to sue notice and well beyond the ninety day period established in 42 U.S.C. § 2000e–5(f)(1).

■ Hollowell seeks to invoke the continuing violations doctrine to circumvent the ninety day statutory requirement and preserve his claims, despite the almost two year delay between his receipt of the EEOC's right-to-sue letter and the filing of his complaint. However, Hollowell's argument is foreclosed by our recent decision in *Wade v. Knoxville Utilities Board,* where we concluded that the continuing violations doctrine does not apply to the ninety day statute of limitations provided in § 2000e–5(f)(1). 259 F.3d 452, 461 (6th Cir.2001) (citations omitted). Accordingly, Hollowell's Title VII racial discrimination and retaliation claims asserted in Charges One and Two are time barred.

#### 2. Elliott–Larsen

Hollowell's complaint alleges racial discrimination claims under Elliott–Larsen arising from incidents occurring between 1992 and 1994. The applicable statute of limitations for such claims is three years. *See* Mich. Comp. Laws § 600.5805(8). Hollowell attempts to save these claims by application of the continuing violations doctrine.

Hollowell correctly notes that the Michigan Supreme Court has applied the continuing violations doctrine, developed by federal courts in the context of Title VII claims, to Elliott–Larsen claims. *See Sumner v. Goodyear Tire & Rubber Co.,*

---

1. We note that the district court "f[ound] it unlikely" that an African–American manager would retaliate against an African–American employee "for attempting to protect the rights of a protected class of which she is also a member." *Hollowell,* 50 F.Supp.2d at 703. Such an inference is impermissible. *See Lewis v. Sears Roebuck & Co.,* 845 F.2d 624, 635 (6th Cir.1988) (stating that the presence of an African–American in the decision-making process does not mean that discrimination against another African–American cannot occur). However, our review of the evidence demonstrates that the district court's error was *de minimis.*

427 Mich. 505, 398 N.W.2d 368, 376 n. 4 (Mich.1987); *see also Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 223 (6th Cir. 1991) (stating that the Michigan Supreme Court adopted the continuing violations doctrine developed by the federal courts).

Michigan recognizes two actionable sub-theories of the continuing violations doctrine. First, "[t]he 'policy of discrimination' subtheory involves 'allegations that an employer has engaged in a continuous policy of discrimination.'" *Phinney v. Perlmutter*, 222 Mich.App. 513, 564 N.W.2d 532, 551 (Mich.App.Ct.1997) (citing *Summer*, 398 N.W.2d at 378). Second, "[t]he 'continuing course of conduct' subtheory involves a situation 'where an employee challenges a series of allegedly discriminatory acts which are sufficiently related so as to constitute a pattern, only one of which occurred within the limitation period.'" *Phinney*, 564 N.W.2d at 551 (citing *Sumner*, 398 N.W.2d at 378).

First, Hollowell argues that he presented sufficient evidence to demonstrate a "continuous policy of discrimination" at MichCon. Hollowell points to the affidavit of Martin M. Wing, Ph.D., which states that between 1994 and 1998, African-American information technology professionals were paid an average of $5,000 less than their Caucasian counterparts. Dr. Wing's affidavit, however, does not describe his methodology or whether or how he incorporated factors such as seniority, title, experience, and merit bonuses into his analysis. "For statistics to be valid and helpful in a discrimination case, 'both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.'" *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 944 (6th Cir.1987) (quoting *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C.Cir.1984)).

Hollowell also points to the affidavit of Chris Stanglewicz, a former MichCon employee, to support his argument that MichCon has a policy of discrimination. However, the affidavit does not include any statement about whether MichCon has a policy of discrimination against its African–American employees. The affidavit is a recitation of conclusory allegations without any factual detail and is insufficient to create a genuine issue of material fact as to Hollowell's retaliation claim. *See Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir.1993) (stating that an unsupported affidavit is insufficient to prove the existence of a genuine issue of material fact).

▪ Hollowell has not come forward with any evidence to demonstrate that MichCon engaged in a "continuous policy of discrimination" against African–Americans in general. Therefore, Hollowell failed to establish the policy of discrimination subtheory of Michigan's continuing violations doctrine.

Second, Hollowell argues that he presented sufficient evidence to demonstrate that MichCon's allegedly discriminatory acts were "sufficiently related so as to constitute a pattern," thus satisfying the continuing course of conduct subtheory of the continuing violations doctrine. Hollowell alleges that his racial discrimination claims based on events that occurred prior to August 31, 1994, outside the three year period of limitations, are sufficiently related to his racial discrimination claims related to events within the three year period so as to constitute a pattern of discrimination. Hollowell's racial discrimination claims beyond the limitations period are based on Lydick's allegedly discriminatory comments and evaluation in 1992, Miller's evaluation in 1993, and the reclassification through MichCon's Realignment Program in 1994. Hollowell's racial discrimination claims that fall within the three year peri-

od of limitations are based on Gail Parks's decision not to promote him to a formal leadership position in 1995 and 1996 and his salary reduction through the JET program in 1996.

In applying the continuing course of conduct subtheory, the Michigan Supreme Court identified the following relevant factors:

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Sumner,* 398 N.W.2d at 382 (quoting *Berry v. L.S.U. Board of Supervisors,* 715 F.2d 971, 981 (5th Cir.1983)).

█ Although Hollowell has established the first *Sumner* factor, as all his claims assert racial discrimination, he failed to establish the remaining factors. As to the "frequency" factor, Hollowell's racial discrimination claims arise from isolated events that occurred over a four year period, rather than continuous, recurring discriminatory acts. Such isolated events are not indicative of a "continuing course" of discriminatory conduct. *See, e.g., Sumner,* 398 N.W.2d at 382 (suggesting that an alleged act recurring on a biweekly basis is more indicative of frequency than an isolated employment decision). As to the "permanence" factor, the allegedly discriminatory acts, particularly the reclassification and the evaluation, had a degree of permanence that should have informed Hollowell of his duty to exercise his rights. Indeed, Hollowell clearly was aware of the need to vindicate his rights as he promptly filed Title VII charges alleging racial discrimination with the EEOC. Accordingly, Hollowell has not established the continuing course of conduct subtheory of the continuing violations doctrine.

In sum, the continuing violations doctrine is not applicable in this instance and Hollowell's Title VII claims asserted in Charges One and Two and his Elliott–Larsen claims arising from events that occurred prior to August 31, 1994 are time barred. Consequently, the only remaining claims are Hollowell's Title VII retaliation claims alleged in Charges Three and Four, and his Elliott–Larsen retaliation and racial discrimination claims arising from events occurring on or after August 31, 1994.

*C.  Elliott–Larsen Racial Discrimination Claims*

Hollowell's claims of racial discrimination arising from incidents after August 31, 1994, relate to his salary reduction through the JET assessment process and Mich-Con's failure to promote him to formal leadership positions. In reviewing Hollowell's claims, the district court concluded that Hollowell had not come forward with sufficient evidence to establish a genuine issue of material fact as to whether Mich-Con's stated reasons for the adverse employment actions were pretextual. *See Hollowell,* 50 F.Supp.2d at 705.

Michigan courts look to federal law when reviewing claims of employment discrimination filed under Elliott–Larsen. *See Jenkins v. Southeastern Mich. Chapter, Am. Red Cross,* 141 Mich.App. 785,

369 N.W.2d 223, 227 n. 2 (Mich.Ct.App. 1985). In the absence of direct evidence, Michigan courts apply the burden-shifting analysis approach for inferential proof of discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906, 915 n. 19 (Mich.1998).

■ To establish a prima facie case of racial discrimination under Michigan law, Hollowell must show that (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001) (citations omitted). If Hollowell establishes a prima facie case of discrimination, MichCon has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by Hollowell's prima facie case. *See id.* at 521. The articulation requirement means that MichCon "has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason." *Id.* If MichCon meets this burden, Hollowell " 'must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination.' " *Hazle*, 628 N.W.2d at 522 (quoting *Lytle*, 579 N.W.2d at 916).

### 1. JET Assessment Process

Hollowell alleges that MichCon racially discriminated against him when it reduced his salary through the JET assessment process. MichCon argues that it reduced Hollowell's salary because he failed to demonstrate the necessary JET competencies.

Assuming that Hollowell could make out a prima facie claim of racial discrimination, he failed to demonstrate that MichCon's legitimate, nondiscriminatory reason for reducing his salary, i.e., his failure to submit the necessary JET competencies, was a pretext for discrimination. Hollowell concedes that he refused to submit the necessary competencies to maintain his salary level. Hollowell merely alleges that he did not submit the competencies because MichCon's JET process was "flawed" and that he would not participate in a "flawed process." (J.A. at 413).

■ Although Hollowell may quarrel with MichCon's business decision to assess its employees through the JET process, " '[d]isputation of the facts underlying [the defendant's] legitimate business reason . . . is not sufficient to carry [the plaintiff's] burden.' " *Gribcheck v. Runyon*, 245 F.3d 547, 552 (6th Cir.2001) (quoting *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir.1987)). While we are cognizant that the combination of multiple assessment programs, company wide reclassifications, and formal evaluations could easily function as a subterfuge for discrimination by an employer, an aggrieved employee must come forward with more than a mere assertion that his employer acted with discriminatory motive. Because Hollowell failed to present any evidence to rebut MichCon's proffered reason for the salary reduction, the district court properly granted MichCon's motion for summary judgment on Hollowell's racial discrimination claims relating to the JET program.

### 2. Failure to Promote

Hollowell alleges that MichCon failed to promote him to each of three formal leadership positions available in 1995 and 1996 on the basis of his race. Hollowell alleges that Parks appointed an East Indian man and two white males who were less quali-

fied than him to the formal leadership positions. MichCon contends that Hollowell was not promoted because he was not the most qualified applicant, as he needed to improve his managerial and interpersonal skills.

■ Again, even if Hollowell could establish a prima facie claim of racial discrimination, Hollowell failed to offer any evidence to rebut MichCon's legitimate, non-discriminatory reason for the denial of the promotion. While Hollowell submitted the Stanglewicz affidavit, which suggests that Hollowell had above average skills in general, Stanglewicz neither directly supervised Hollowell, nor formally evaluated Hollowell's job performance. Stanglewicz did not assess or review Hollowell's qualifications as to the specific skills necessary for a formal leadership position. Hollowell has offered no evidence that he has sufficient managerial or interpersonal skills. Rather, the evidence demonstrates that Hollowell's formal evaluations, conducted by different managers over a number of years, consistently indicated that Hollowell needed to improve his managerial and interpersonal skills. Because the evidence does not establish a genuine issue of material fact as to whether MichCon's stated reason for denying Hollowell the promotions was pretextual, the district court properly granted MichCon's motion for summary judgment on Hollowell's claims.

### D. Title VII and Elliott–Larsen Retaliation Claims

Hollowell alleges that MichCon retaliated against him for filing charges with the EEOC (1) by reducing his salary through the JET assessment process; and (2) by failing to promote him to formal leadership positions. As discussed above, MichCon produced evidence that it reduced Hollowell's salary because he did not demonstrate the necessary JET competencies to maintain his salary level and that Hollowell did not receive a formal leadership position because he was not the most qualified applicant.

### 1. Title VII

■ In order to establish a prima facie case of retaliation under Title VII, Hollowell must show that: (1) he engaged in a protected activity; (2) MichCon knew of this exercise of his protected rights; (3) MichCon consequently took an employment action adverse to Hollowell; and (4) there is a causal connection between the protected activity and the adverse employment action. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000); *cf. E.E.O.C. v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir.1997). If Hollowell establishes a prima facie case, MichCon must " 'articulate some legitimate, nondiscriminatory reason' for its actions." *Morris,* 201 F.3d at 792–93 (quoting *McDonnell Douglas,* 411 U.S. at 802 (1973)). If MichCon comes forward with a nondiscriminatory reason, Hollowell must "proffer evidence sufficient to raise the inference that h[is] protected activity was the likely reason for the adverse action." *See Zanders v. Nat'l R .R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990) (quoting *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir.1982) (citation omitted)).

Assuming that Hollowell could make a prima facie case of retaliation under Title VII, Hollowell's retaliation claims fail for the same reason his discrimination claims fail. Hollowell has not come forward with any evidence to dispute MichCon's legitimate, nondiscriminatory reasons for the adverse employment actions taken against him. Therefore, the district court properly granted summary judgment on Hollowell's Title VII retaliation claims.

## 2. Elliott–Larsen

 "To establish a prima facie case of retaliation under [Elliott–Larsen], a plaintiff must show (1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Meyer v. City of Center Line,* 242 Mich.App. 560, 619 N.W.2d 182, 188 (Mich.App.Ct.2000) (citing *DeFlaviis v. Lord & Taylor, Inc.,* 223 Mich.App. 432, 566 N.W.2d 661, 663 (Mich.App.Ct.1997) (citations omitted)). To establish a casual connection between the protected activity and the adverse employment action, the plaintiff must show that his participation in the protected activity was a "significant factor" in the employer's adverse employment action, not merely that there was a causal link between the two. *Barrett v. Kirtland Cmty. Coll.,* 245 Mich.App. 306, 628 N.W.2d 63, 70 (Mich.App.Ct.2001) (citations omitted).

Hollowell has failed to come forward with any evidence that his filing of EEOC charges was a "significant factor" in MichCon's adverse employment actions. As discussed above, the evidence demonstrates that Hollowell's salary was reduced do his own failure to submit competencies. Likewise, the evidence demonstrates that Hollowell was not promoted because he lacked managerial and interpersonal skills. Hollowell has submitted no evidence to give rise to a genuine issue of material fact as to whether MichCon's adverse employment actions were in any way related to Hollowell's decision to file EEOC charges. Accordingly, the district court properly granted MichCon's motion for summary judgment on Hollowell's Elliott–Larsen retaliation claims.

## IV. CONCLUSION

Viewing the evidence in the light most favorable to Hollowell, he has failed to present sufficient evidence to support a genuine issue of material fact as to his racial discrimination and retaliation claims under both Title VII and Elliott–Larsen. Accordingly, we AFFIRM the judgment of the Honorable Paul Gadola of the United States District Court for the Eastern District of Michigan.